UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ESPERANZA REYES RENDON,
Plaintiff,
v.

T-MOBILE USA, INC., *et al.*,
Defendants.

Case No. 2:24-cv-01666-FLA (KSx)

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [DKT. 15]**

**RULING**

Before the court is Defendant T-Mobile USA, Inc.'s ("T-Mobile") Motion to Compel Arbitration ("Motion"). Dkt. 15 ("Mot"). Plaintiff Esperanza Rendon ("Plaintiff") opposes the Motion. Dkt. 22 ("Opp'n"). On June 25, 2024, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for June 28, 2024. Dkt. 30; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court GRANTS the Motion and ORDERS Plaintiff's individual claims to binding arbitration. Plaintiff's representative claims are STAYED pending decision by the arbitrator or further order by this court.

**BACKGROUND**

Plaintiff, a long-time customer of T-Mobile, initiated this action to challenge the imposition of various service fees and surcharges on her billing statements. FAC ¶¶ 9–10.[1] Plaintiff asserts causes of action against T-Mobile for unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., false advertising in violation of Cal. Bus. & Prof. Code § 17500, *et seq*., violations of California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), conversion, negligence, breach of the implied covenant of good faith and fair dealing, fraud, and concealment. *See generally id.*

Plaintiff brings this action on behalf of herself and two discrete classes: (1) "All California residents whose monthly invoice includes Add-ons such as device protection plan (insurance), Travel insurance and/or other addons that are contained in the monthly statements to the consumer"; and (2) "All California residents whose monthly invoice includes a 'Regulatory Programs & Telco Recovery Fee' by Defendants." *Id.* ¶¶ 67–68 (reproduced as stated in original).

---

[1] T-Mobile removed the action to this court on February 29, 2024. Dkt. 1 ("Notice of Removal"). T-Mobile filed the First Amended Complaint as an exhibit to the Notice of Removal in Dkts. 1-2 and 1-3. The court cites to the First Amended Complaint as "FAC."

T-Mobile moves for an order compelling arbitration of Plaintiff's claims, based on Plaintiff's prior assent to a mandatory arbitration provision. Mot. at 9.

## DISCUSSION

### I. Legal Standard

Section 2 of the Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4 [9 U.S.C. § 401, *et seq.*]." 9 U.S.C. § 2. "[T]his provision reflect[s] both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). Accordingly, "courts must place arbitration agreements on equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted). Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (quotation marks omitted).

"It is well established that where the contract contains an arbitration clause, there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quotation marks omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Three Valleys Mun. Water Dist. v. E. F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991) (quotation marks omitted).

### II. Analysis

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*,

537 U.S. 79, 84 (2002)). "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Id.* (emphasis in original) (quoting *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (brackets omitted).

T-Mobile moves to compel Plaintiff's claims to arbitration on the grounds that Plaintiff assented to the operative terms and conditions governing her account with T-Mobile ("2023 Terms and Conditions"), which require her to arbitrate her claims regarding T-Mobile's alleged failure to disclose certain fees and surcharges to customers. Mot. at 15. In relevant part, the 2023 Terms and Conditions state:

> By accepting these T&Cs, you are agreeing to resolve any dispute with us through individual binding arbitration or small claims dispute procedures (unless you opt out), and to waive your rights to a jury trial and to participate in any class action suit.
>
> ***Individualized Dispute Resolution and Arbitration.*** **YOU AND WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES, OF ANY NATURE, INCLUDING TORT AND STATUTORY CLAIMS, IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY NOTICE, PRIVACY OR DATA SECURITY PRACTICES, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY INDIVIDUAL BINDING ARBITRATION OR IN SMALL CLAIMS COURT. THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. THE ARBITRATOR MUST FOLLOW THIS AGREEMENT AND CAN AWARD, ON AN INDIVIDUAL BASIS, THE SAME DAMAGES [AND] RELIEF AS A COURT (INCLUDING ATTORNEYS' FEES[.]**
>
> …
>
> Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIMS IN COURT AND NOT BY ARBITRATION IF**

> **YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE EARLIER OF THE DATE YOU PURCHASED A PRODUCT OR DEVICE FROM US OR THE DATE YOU ACTIVATED A NEW LINE OF SERVICE[.]** …
>
> The arbitration of all disputes will be administered by the [American Arbitration Association ('AAA')] under its Consumer Arbitration Rules in effect at the time the arbitration is commenced, except to the extent any of those rules conflict with our agreement in these T&Cs, in which case these T&Cs will govern. The AAA rules are available at www.adr.org. …
>
> The arbitrator will have the power to rule on their own jurisdiction, including any issues concerning the existence, validity, or scope of either this Agreement or the arbitration clause, including whether any claim is subject to arbitration provided that: (1) any dispute about whether a claim qualifies for small claims court will be resolved by that court, not by an arbitrator; and (2) a court will have the authority to determine whether the parties have complied with the informal dispute resolution procedures set out above and whether any claim you or we have filed in arbitration or in court is inconsistent with the Class and Mass Action Waiver included in these T&Cs.

Dkt. 16-1, Ex. A at 8–11 (emphasis, italics, and capitalization in original); *see also id.*, Ex. B (Spanish language version).

Accordingly, "there is an agreement to arbitrate between the parties," and the language in the 2023 Terms and Conditions establishes an express agreement to delegate arbitrability and questions of enforceability, validity, and scope of the agreement to the arbitrator. *See Brennan*, 796 F.3d at 1130.

In opposition, Plaintiff argues the 2023 Terms and Conditions "lack[] mutual assent" because she was not provided adequate notice of a mandatory arbitration provision. Opp'n at 11–13. The court disagrees. Plaintiff received notice of the 2023 Terms and Conditions via email, when T-Mobile notified customers of forthcoming updates to its terms and conditions. Dkt. 16-1 ¶ 8, Ex. C. T-Mobile's records reflect it "sent an email … to [Plaintiff] at the email address associated with [her] Account," which informed Plaintiff, "[b]y using your service after [May 15, 2023], you'll agree

to the updated Terms and Conditions." *Id.* The email also provided links to the full terms of the 2023 Terms and Conditions in both English and Spanish, and a "Frequently Asked Questions" page detailing the changes in English and Spanish. Dkt. 16-1 ¶ 8, Exs. A–B, D–E. Plaintiff does not dispute she continued using her T-Mobile service after May 15, 2023, nor does she provide evidence establishing she opted out of the arbitration provision through the methods described in the 2023 Terms and Conditions.

While Plaintiff contends she did not receive the email (Opp'n at 6), T-Mobile has also presented evidence Plaintiff signed previously at least four equipment purchase contracts between 2016 and 2019, each containing the following arbitration provision: "We and you each agree that … any and all claims or disputes in any way related to or concerning this agreement . . . will be resolved by binding arbitration or in small claims court." Dkt. 16-1, Exs. O–R. Between 2016 and 2017, Plaintiff signed three equipment leasing agreements, with the same arbitration provision. *Id.*, Exs. S–U. Accordingly, Plaintiff has been afforded sufficient notice of T-Mobile's arbitration provisions.

Plaintiff also argues the delegation provision is unenforceable because it does not clearly and unmistakably delegate arbitrability. Opp'n at 7–8. According to Plaintiff, she is an unsophisticated party based on her lack of fluency in English, and "'[w]here at least one party is unsophisticated, judges in this district routinely find that the incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability.'" *Id.* at 8.[2]

However, the Ninth Circuit has held the "incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability" because they provide that the arbitrator shall have the power to

[2] Plaintiff references "judges in this district," but cites to cases from the Northern District of California. Opp'n at 8 (citing, *e.g.*, *Magill v. Wells Fargo Bank, N.A.*, Case No. 4:21-cv-01877-YGR, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021)).

rule on his or her own jurisdiction.[3] *Brennan*, 796 F.3d at 1130 (brackets in original) (citation omitted). Though the facts in *Brennan* involved a dispute between two sophisticated parties, the court noted, "our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts." *Id.*

Since *Brennan*, "the majority of courts have concluded that *Brennan* applies equally to sophisticated and unsophisticated parties." *Maybaum v. Target Corp.*, Case No. 2:22-cv-00687-MCS (JEMx), 2022 WL 1321246, at *5 (C.D. Cal. May 3, 2022) (internal citation omitted); *see also Torres v. Secure Commc'n Sys.*, Case No. 8:20-cv-00980-JVS (JDEx), 2020 WL 6162156, at *4 (C.D. Cal. July 25, 2020) (joining the "majority of courts in finding … *Brennan* … applies similarly to non-sophisticated parties"); *Gountoumas v. Giaran*, Case No. 2:18-cv-07720-JFW (PJWx), 2018 WL 6930761, at *6 (C.D. Cal. Nov. 21, 2018) ("The Court agrees with the majority view, and concludes that incorporation of AAA rules constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability, even if one or more of the parties are unsophisticated."); *Smith v. Nerium Int'l, LLC*, Case No. 8:18-cv-01088-JVS (PLAx), 2019 WL 7195330, at *4 (C.D. Cal. Sep. 10, 2019) (same). This court agrees with the majority view and concludes the incorporation of the AAA rules constitutes clear and unmistakable evidence Plaintiff agreed to arbitrate arbitrability, even if she was an unsophisticated party.

Furthermore, the 2023 Terms and Conditions also state explicitly, "[t]he arbitrator will have the power to rule on their own jurisdiction, including any issues concerning the existence, validity, or scope of either this Agreement or the arbitration

---

[3] The relevant AAA rule provides, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." Dkt. 17-1, Ex. A at 17.

clause, including whether any claim is subject to arbitration[.]" Dkt. 16-1, Ex. A.[4]

Accordingly, the 2023 Terms and Conditions clearly and unmistakably delegate gateway issues of arbitrability to the arbitrator. To the extent Plaintiff argues the agreement is unconscionable based on her lack of sophistication, such arguments go to the validity and enforceability of the agreement, and must be resolved by the arbitrator.[5]

**CONCLUSION**

For the aforementioned reasons, the court GRANTS the Motion and ORDERS Plaintiff's individual claims to arbitration. The arbitrator shall consider and decide the parties' arguments regarding the enforceability, applicability, and validity of the Agreement before arbitrating Plaintiff's individual claims.

The parties shall submit the matter to arbitration within thirty (30) days of this Order, and file a joint report regarding the status of the arbitration within seven (7) days of submission and every ninety (90) days thereafter. Failure to submit the matter

[4] Plaintiff argues this language is a new addition to the 2023 Terms and Conditions that fails for lack of consideration. Opp'n at 10. However, T-Mobile has provided evidence that all prior versions of its terms and conditions contained similar arbitration provisions. *See* Dkt 16-1, Exs. F–M. Moreover, as discussed, T-Mobile notified customers that continued use of their services would constitute acceptance of the 2023 Terms and Conditions (Dkt. 16-1 ¶ 8, Ex. C), and Plaintiff does not dispute she continued to use T-Mobile's service after the updated terms and conditions went into effect. *See MySpace, Inc. v. The Globe.com, Inc.*, Case No. 2:06-cv-03391-RGK (JCx), 2007 WL 1686966, at *10 (C.D. Cal. Feb. 27, 2007) (holding parties were bound by future versions of defendant's terms of service where the terms of service provided that modifications were effective on posting); *Joel Bauer v. Hawkins*, Case No. 2:18-cv-09887-DSF (MRWx), 2019 WL 4238885, at *2 (C.D. Cal. Mar. 25, 2019) (finding plaintiffs consented to updated terms and conditions where corporate notice said continued use of service would constitute acceptance of terms).

[5] Plaintiff's argument that the delegation clause is unconscionable (Opp'n at 14) fails as she does not offer legal authority to support the substantive unconscionability of a delegation provision. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (internal quotations omitted) ("[B]oth procedural and substantive unconscionability must be present for an agreement to be unenforceable[.]").

to arbitration or file joint reports timely may result in sanctions up to and including the dismissal of the action without prejudice or a determination that Defendants have waived their rights to arbitrate Plaintiff's claims.

Plaintiff's representative claims are STAYED pending the arbitrator's decision or further order by this court.

IT IS SO ORDERED.

Dated: August 30, 2024

FERNANDO L. AENLLE-ROCHA
United States District Judge